IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jesse Guzman et al., <br><br> Plaintiff, <br><br> v. <br><br> Hamilton Reserve Bank et al., <br><br> Defendants. | Civil No. 24-1467(GMM) |

## OPINION AND ORDER

On October 3, 2024, Plaintiffs Jesse Guzman ("Guzman"), Ultimate Concrete, LLC ("Ultimate Concrete"), and Intercoastal Finance Ltd. ("Intercoastal") (collectively, "Plaintiffs") filed the instant *Complaint* against Hamilton Reserve Bank Ltd. ("HRB"), and Acelera International Custodial Bank, LLC ("Acelera"), (collectively "Defendants"). *See* (Docket No. 1). Plaintiffs bring claims based on "Defendants' illegal withholding of and refusal to return Plaintiff's money." (Id.). Specifically, the *Complaint* presents claims for breach of contract, conversion, fraud, and unjust enrichment; claims for false representation and illegally withholding money in violation of 23 L.P.R.A. § 1014 and 19 L.P.R.A. §§ 865, 952; claims for breach of warranty, misleading advertising, deceptive conduct, and false representations in violation of the Consumer Affairs Act Procedural History of St. Kitts and Nevis (CAP 18.38 §§§ 10, 35, 36); claims for false

representations, unconscionable conduct, and illegally withholding money in violation of Tex. Bus. & Com. Code §§ 4.215, 4.402, and 7.50(a)(1), (3); and claims for unfair and deceptive trade practices in violation of N.M.S.A § 57-12-3. (Id. at 1-2).

The case is before this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a)(3) because Mr. Guzman, Ultimate Concrete, and Acelera Bank are citizens of different states and territories within the United States, and Intercoastal Finance Ltd. and HRB are citizens of foreign states, and the matter in controversy exceeds $75,000 as required by statute. *See* (id. at ¶ 6).

Before the Court is *Defendants' Memorandum of Law in Support of Their Motion for Stay of this Action Pending Mediation/Arbitration, and/or to Dismiss the Action Pursuant to Federal Rule of Civil Procedure 12(b)(6)* ("*Motion to Stay/Dismiss*"). (Docket No. 13). Defendants ask the Court to stay the instant proceedings pending mandatory arbitration pursuant to a provision in an agreement between certain parties. In the alternative, Defendants move to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs filed *Plaintiffs' Memorandum of Law in Opposition to Motion to Stay/Dismiss* ("*Opposition*") at Docket No. 21. Thereafter, Defendants timely filed, at Docket No. 30, *Defendants' Reply in*

Case 3:24-cv-01467-GMM    Document 43    Filed 08/12/25    Page 3 of 20

Civil No. 24-1467 (GMM)
Page -3-

*Further Support of Their Motion for a Stay of This Action Pending Mediation/Arbitration, and/or to Dismiss the Action Pursuant to Federal Rule of Civil Procedure 12(B)(6)* ("*Reply*").

## I.   RELEVANT FACTS[1]

Plaintiff Ultimate Concrete is a supplier of concrete operating in several states throughout the United States. *See* (id. at ¶ 10). Plaintiff Intercoastal is affiliated with Ultimate Concrete through their shared ownership by Plaintiff Guzman. *See* (id.).

Defendant HRB is a bank organized under the laws of St. Kitts and Nevis, where it also has its principal place of business. Defendant Acelera is an international banking entity organized under the laws of Puerto Rico, with its principal place of business in San Juan, Puerto Rico. *See* (id. at ¶ 4). *See* (id. at ¶ 5). Acelera[2], upon information and belief, operates jointly with HRB. (Id.).

On September 15th, 2021, Intercoastal and HRB entered into "HAMILTON RESERVE BANK LTD. CUSTOMER ACCOUNT AGREEMENT" ("Agreement"). *See* (id. at ¶ 15). The Agreement provided that "[a]ssets from your Account generally may be withdrawn three business days after they have cleared in your Account. . .you may make withdrawals from your Account up to the amount of the

---

[1] The following facts are recounted from the *Complaint* at Docket No. 1.
[2] Then known as "Hamilton International Reserve Bank, LLC, which was formerly known as State Trust International Bank & Trust." (Id. at ¶ 12).

Available Balance. . .the Bank will endeavor to make your assets available to you as promptly as possible within its discretion." (Id. at ¶ 16).

Based on representations made by Defendants, in December 2021, Plaintiffs transferred $50 million from Ultimate Concrete, LLC's Bank of America account in El Paso County, Texas to HRB. *See* (id. at ¶ 11). HRB subsequently wired the money back and instructed Plaintiffs to wire the money instead to HRB's affiliate, Acelera in San Juan, Puerto Rico. *See* (id. at ¶ 12). Plaintiffs followed HRB's directions and wired approximately $50 million to Acelera. *See* (id. at ¶ 13). The wiring instructions provided by Defendants stated that Acelera was fully licensed in the U.S. and is under "Common Ownership" with HRB. (Id.). HRB referred to Acelera as "our U.S. bank" which transacts directly with the U.S. Federal Reserve. (Id.). Acelera subsequently wired the funds to HRB, its affiliate in St. Kitts and Nevis. *See* (id. at ¶ 14)

Around the time of Plaintiffs' deposit, Defendants made a $250 million investment in Sri Lankan government bonds. *See* (id. at ¶ 17). Defendants later sued in the United States District Court for the Southern District of New York "in an attempt to enforce the rights accruing to its purported beneficial interest in the Bonds." (Id.) That action is currently stayed pending the Sri Lankan government's negotiations with the International Monetary Fund. *See* (id. at ¶ 18).

In May of 2022, Plaintiffs decided to request a withdrawal of $27 million from their account with Defendants. *See* (id. at ¶ 20). After contacting Defendants' account manager, Oksana Williams, Plaintiffs were asked to send a "test" wire of $200,000, which they did on June 2, 2022. *See* (id. at ¶ 23). On June 24, 2022, Plaintiffs reasserted their request to withdraw $27 million, but Defendants declined to conduct the transaction. (Id.). Over the course of the following year, Plaintiffs attempted to comply with any and all requests for additional documents and information from Defendants, but Defendants would respond by "1) claiming that the documents were not received; 2) claiming that the documents needed to be sent to a different department within Defendants' organization; 3) claiming that the documents needed to be provided via a different method (*e.g.*, a "Customer Service Portal" rather than email); 4) claiming that a new, different set of documents was needed; and—after those excuses wore thin— 5) requesting the *exact same documents* all over again." (Id. at ¶ 25) (emphasis in original). Plaintiffs made requests to meet with the bank's officers to resolve the apparent conflicts but did not receive responses to these requests, nor did Plaintiffs' attorneys receive responses from the Defendants during this time. *See* (id. at ¶ 33).

On October 3, 2023, Guzman filed a sworn Statement of Complaint with the Royal St. Christopher and Nevis Police in the White-Collar Crime Unit regarding HRB and its refusal to return

funds to Plaintiffs. *See* (id. at ¶ 35). As of yet, Plaintiffs have received no relief. (Id.).

On July 16, 2024, Plaintiffs, through counsel, formally requested to activate the alternative dispute resolution provisions of the Agreement, which required HRB to appoint a mediator. *See* (id. at ¶ 36). A subsequent letter was sent on August 26, 2024, with the same request. *See* (id. at ¶ 37). On September 2, 2024, HRB's Operations Department finally contacted Intercoastal and acknowledged receipt of the August 26, 2024, letter. *See* (id. at ¶ 38). Defendants also requested a notarized letter authorizing counsel to participate in mediation on behalf of Plaintiffs. (Id.). Plaintiffs complied by uploading the requested letter to the Plaintiffs online document portal as directed by HRB and by attaching the same to the email correspondence between the parties. *See* (id. at ¶ 39). HRB continues to refuse to appoint a mediator and refuses to engage in any mediation discussions or to return Plaintiffs' funds. *See* (id. at ¶¶ 39-40).

## II. RELEVANT PROCEDURAL HISTORY

The *Motion to Stay/Dismiss* primarily argues that Plaintiffs' claims are subject to mandatory arbitration in Nevis under the Agreement between Intercoastal and HRB, including those brought by and against nonsignatories to the Agreement. *See* (Docket No. 13 at 13). On this basis, the Defendants ask the Court to stay the

proceedings in the present case pending the outcome of arbitration. *See* (id.). Further, Defendants posit that the forum selection clause in the same Agreement requires any non-arbitrable claims to be resolved by the courts of Nevis, including noncontractual tort claims and claims by and against nonsignatories. *See* (id. at 23-24).

In the alternative to staying pending arbitration, Defendants ask the Court to dismiss this action, first arguing that the Court lacks subject-matter jurisdiction over the case because Plaintiffs have included Acelera as a Defendant to manufacture diversity and urge the court to "remove the window dressing." *See* (id. at 27-28). They further assert that Plaintiffs Guzman and Ultimate Concrete have no standing to bring claims against any of the Defendants. *See* (id. at 31). Next, the Defendants argue that the Court has no general or specific personal jurisdiction over HRB and should dismiss all claims against them in this forum. *See* (id. at 33). Finally, Defendants contend that the C*omplaint* fails to state a claim against Acelera and that the choice of law clause in the Agreement preempts the tort claims under Puerto Rico, Texas, and New Mexico law in the *Complaint*.

In their *Opposition*, Plaintiffs concede Guzman's claims against all defendants, including those brought under the laws of New Mexico. *See* (Docket No. 21 at 5, fn. 3). However, Plaintiffs contest each of the remaining arguments in the *Motion to*

*Stay/Dismiss.* Plaintiffs argue that Defendants waived their right to mediation or arbitration under the Agreement due to their pre-litigation conduct and that only HRB and Intercoastal can be bound by the terms of the Agreement. Plaintiffs urge this Court to exercise jurisdiction over all other claims and parties in this case and request the Court resolve the claims on the merits. In the alternative, Plaintiffs request that if the Court lacks sufficient evidence to determine its subject-matter jurisdiction, that it allow the parties to conduct limited discovery only as to diversity jurisdiction. *See* (id. at 20, fn. 8).

Plaintiffs filed *Plaintiffs Supplemental Memorandum of Law in Opposition to Motion to Stay and/or Dismiss* ("*Supplemental Motion*") on May 19, 2025. (Docket No. 34). The *Supplemental Motion* presents new statements made by Defendants' counsel, which Plaintiffs claim are relevant to their arguments that Defendants waived their right to arbitrate. See (id.). *Defendants' Reply to Co-Plaintiff's Supplemental Memorandum of Law in Opposition to Motion to Stay and/or Dismiss* argues that the contents of the *Supplemental Motion* do not impact the reasoning of the *Motion to Stay/Dismiss*, and that the statements presented by Plaintiffs were communications made for purposes of settlement negotiations. *See* (Docket No. 36). For the reasons discussed *infra* in Section III, the Court need not discuss whether it is proper to consider the arguments brought in the *Supplemental Motion*.

### III. DISCUSSION

A. <u>12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

Because it is a threshold matter which affects the Court's ability to hear the case, the Court must first address Defendants' challenge to Plaintiffs assertion of subject-matter jurisdiction before considering other arguments in the *Motion to Stay/Dismiss*. *See* <u>Lawless v. Steward Health Cares Sys., LLC</u>, 894 F.3d 9, 16 (1st Cir. 2018) ("Since the existence of federal subject-matter jurisdiction implicates our power to hear and determine a case, we must address that issue before proceeding further.") (*citing* <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998)).

1. <u>Legal Standard</u>

"The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 362–65 (1st Cir. 2001). Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including diversity jurisdiction and standing. <u>Id.</u> The plaintiff bears the burden of proving that diversity jurisdiction exists. *See* <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 97, 130 S.Ct. 1181, 1194, 175 L.Ed.2d 1029 (2010). It must provide "competent proof" to do so. <u>Id.</u> at 97-98. Where the factual allegations concerning the basis for federal jurisdiction "are illuminated, supplemented, or

even contradicted by other materials in the district court record," the court "need not confine [its] jurisdictional inquiry to the pleadings, but may consider those other materials." Aquilar v. U.S. Immigration and Customs Enforcement Div. of Dep't of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007).

The First Circuit has established two ways to challenge a court's subject-matter jurisdiction under Rule 12(b)(1): facial challenges and factual challenges. A facial challenge is one that contests the *sufficiency* of the plaintiff's "jurisdictionally significant facts." Valentin, 254 F.3d at 363. Such an attack requires the Court "merely to look and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007) (*citing* Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir.1999)) (internal quotations omitted). On a factual challenge, by contrast, the defendant controverts "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position." Portland Pipe Line Corp. v. City of S. Portland, No. 2:15-CV-00054-JAW, 2017 WL 1968621, at *2 (D. Me. May 11, 2017) (*quoting* Valentin 254 F.3d at 363). When a party disputes the accuracy of the jurisdictional facts asserted by the complaint, "the plaintiff's jurisdictional

averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentin 254 F.3d at 363. "In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." Id.

When faced with a factual challenge to subject-matter jurisdiction, the Court must then engage in a two-part inquiry. First it must "determine whether the relevant facts, which would determine the court's jurisdiction, also implicate the elements of the plaintiff's cause of action." Torres-Negron, 504 F.3d at 163. If the court determines that the contested jurisdictional facts are not intertwined with the elements of the plaintiff's cause of action, then the court "must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentin, 254 F.3d at 363. This is because "at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case. . ." Torres-Negron, 504 F.3d at 163 (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)); see also Valentin, 254 F.3d at 364 ("A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function").

On the other hand, if the court determines that the disputed jurisdictional facts are intertwined with the merits of the case,

then "the district court should employ the standard applicable to a motion for summary judgment." Torres-Negron, 504 F.3d at 163. Thus, "where the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Id. (*quoting* Trentacosta v. Frontier Pac. Aircraft Indus., Inc._,_ 813 F.2d 1553, 1558 (9th Cir.1987)). Where a defendant presents a 12(b)(1) motion to dismiss, "the parties should submit evidence, much as they would for a summary judgment motion," and "[i]f the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point." Id.

Further, when the merits are intertwined with a 12(b)(1) motion to dismiss, the Court must "consider evidence submitted by [the] defendant in addition to crediting factual allegations made in [the] complaint." Strahan v. Roughead, 910 F.Supp.2d 358, 363-64 (D. Mass. 2012) (*citing* Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dep't of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007)). However, the Court may only credit those well-pleaded factual allegations which are not otherwise contradicted by the

Civil No. 24-1467 (GMM)
Page -13-

record evidence. *See* <u>id.</u> at 377 (only crediting allegations as true "in the absence of any evidence to the contrary").

### 2. Analysis

Diversity jurisdiction under 28 U.S.C. § 1332 requires "complete diversity of citizenship as between all plaintiffs and all defendants." <u>ConnectU LLC v. Zuckerberg</u>, 522 F.3d 82, 91 (1st Cir. 2008). In their *Motion to Stay/Dismiss*, Defendants challenge the Court's subject-matter jurisdiction, arguing that Acelera, a banking entity domiciled in San Juan, Puerto Rico,[3] was improperly added as a defendant to manufacture diversity jurisdiction because otherwise there would be no citizen of any state as a Defendant, thus destroying diversity. *See, e.g.*, <u>Auctus Fund, LLC v. Drone Guarder, Inc.</u>, 588 F. Supp. 3d 177, 183 (D. Mass. 2022) ("The Supreme Court has held that there is no federal diversity jurisdiction over actions between two aliens."); <u>Luftfahrtversicherungs-Aktiengesellschaft v. Markel Ins. Co.</u>, Civil No. 06-61184, 2007 WL 141154, at *2 (S.D. Fla. Jan. 16, 2007) ("[J]urisdiction exists where diverse citizens are joined with aliens under this provision even where the aliens appear on both sides of the controversy.").

To support this argument, Defendants provide a declaration from Cleon Tota, Operations Manager for HRB, based on personal

---

[3] Whether Acelera is a considered a citizen of Puerto Rico for purposes of determining diversity jurisdiction is not challenged by Defendants.

knowledge and made under penalty of perjury. *See* (Docket No. 13-1). As to Acelera's connection to the facts of this case, Tota states the following:

> 30. The funds that Plaintiff Intercoastal sent to HRB were never sent to any bank in Puerto Rico.
>
> 31. The only funds that Plaintiff Intercoastal ever sent to HRB were sent on two dates, and they were sent directly to Defendant HRB, not Defendant Acelera International Custodial Bank, LLC ("Acelera"). First, on October 21, 2021, Plaintiff Intercoastal caused its related entity, Ultimate Concrete, LLC, to transfer $249,915 through Banque Internationale de Arabe Tunisie, a bank in Tunisia, to HRB in Nevis. This deposit was **not** sent to any bank in Puerto Rico, and it was not sent to Acelera.
>
> 32. On December 15, 2021, Plaintiff caused its related entity, Ultimate Concrete LLC, to transfer $50,000,000, through a third-party payment processor licensed in Luisiana, directly to HRB. This deposit was **not** sent to any bank in Puerto Rico, and it was not sent to Acelera. Attached hereto at Exhibit J is a true and correct copy of the wire confirmation of the $50,000,000 wire.
>
> 33. Contrary to the allegations in Plaintiffs' Complaint at Paragraph 12, HRB never informed Plaintiff Intercoastal to send any funds to Acelera.
>
> 34. Indeed, it would have been impossible for HRB to have instructed Plaintiff Intercoastal to wire funds to Acelera in December 2021. This is because in December 2021, Acelera (which was then known as State Trust International Bank & Trust) had not yet undertaken a transaction whereby it became affiliated with HRB. In December 2021, HRB had no relationship whatsoever, let alone transacted in any business with, Acelera.

(Docket No. 13-1 at ¶¶ 30-34) (emphasis in original).

According to the "true and correct copy of the wire confirmation," the transfer was initiated "[f]or the further benefit of OTHER PROJECT FUNDING FFC INTERCOA//STAL FINANCE LTD.

. .BELIZE// CITY, BZ." (Docket No. 13-11 at 1). The "Sender Bank" is "BANK OF AMERICA, N.A., NY," while the "Beneficiary Bank" is "THE RESERVE TRUST CO." (Id. at 2). In the message body of the wire confirmation for the $50 million deposited by HRB on December 15, 2021, the following is recorded: "SenderName" as "Ultimate Concrete LLC" with the address, "12380 EDGEMERE BLVD STE 102 PMB 136 EL PASO TX 7993822627 US"; "ReceiverName" as "HAMILTON RESERVE BANK" with the address, "HAMILTON RESERVE BANK PLAZA JESSUPS ESTATE NEVIS KN." (Id. at 3).

Tota's sworn statements, supported by the wire confirmation, directly contradict the facts as stated by Plaintiffs in the *Complaint*. The evidence presented challenges that after Ultimate Concrete deposited $50 million into the account with HRB in December of 2021, "HRB subsequently wired the money back, and instructed Plaintiffs to wire the money instead to HRB's affiliate, Acelera Bank" located in San Juan, Puerto Rico. (Docket No. 1 at ¶¶ 11-12). In the *Opposition*, Plaintiffs do not provide any additional evidence to corroborate the facts upon which they rely to establish this Court's subject-matter jurisdiction but rather reiterate the sufficiency of the facts pled in the *Complaint*.[4]

---

[4] Plaintiffs cite to Rivera v. Coca-Cola Co., 2014 WL 12725974, at *2 (D.P.R. Mar. 31, 2014) in support of the notion that the court may not consider extrinsic evidence when evaluating the merits of a motion to dismiss. See (Docket No. 21 at 20). However, the Court in Rivera was tasked with resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), not 12(b)(1).

Civil No. 24-1467 (GMM)
Page -16-

Because Defendants challenge the accuracy of the *Complaint* with respect to facts supporting subject-matter jurisdiction, the challenge must be resolved under the standard for a "factual attack." *See* Torres-Negron, 504 F.3d at 163. Thus, the Court must "consider evidence submitted by [the] defendant in addition to crediting factual allegations made in [the] complaint." Strahan, 910 F.Supp.2d at 363-64.

The Court must next determine whether the claims are "intertwined" meaning that the resolution of diversity is dependent on factual matters going to the merits of Plaintiffs' claims. *See* Torres-Negron, 504 F.3d at 163. The *Complaint* presents fifteen causes of action against Defendants Acelera and HRB: conversion, fraud, and unjust enrichment; claims for false representation and illegally withholding money in violation of 23 L.P.R.A. § 1014 and 19 L.P.R.A. §§ 865, 952; claims for breach of warranty, misleading advertising, deceptive conduct, and false representations in violation of the Consumer Affairs Act of St. Kitts and Nevis (CAP 18.38 §§§ 10, 35, 36); claims for false representations, unconscionable conduct, and illegally withholding money in violation of Tex. Bus. & Com. Code §§ 4.215, 4.402, and 7.50(a)(1), (3); and claims for unfair and deceptive trade practices in violation of N.M.S.A § 57-12-3[5]. Each of the causes

---

[5] Withdrawn by Plaintiffs. *See* (Docket No. 21 at 5, fn. 3).

of action, as alleged against Acelera, rely on the factual basis that Acelera engaged in a banking transaction with the Plaintiffs. Thus, whether HRB directed Plaintiffs to deposit funds with Acelera, and whether that transfer took place, is central to both the determination of subject-matter jurisdiction, and the merits of Plaintiffs claims against Acelera.

As stated, when the merits of a claim are intertwined with the facts relevant to the resolution of a 12(b)(1) motion to dismiss, the Court must "consider evidence submitted by [the] defendant in addition to crediting factual allegations made in [the] complaint." Strahan, 910 F.Supp.2d at 363-64. However, the Court may only credit those well-pleaded factual allegations "in the absence of any evidence to the contrary". Id. Because the jurisdictional facts here are intertwined with the merits of the claims against Acelera, the Court must resolve the issue using the summary judgment standard and may grant the 12(B)(1) motion "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Torres-Negron, 504 F.3d at 163 (quoting Trentacosta, 813 F.2d at 1558).

Here, the evidence presented by Defendants in the *Motion to Stay/Dismiss* directly contradict the assertion by Plaintiffs that they transferred $50 million to Acelera pursuant to the wiring instructions provided by HRB. Plaintiffs had the opportunity but failed to present any evidence to the contrary beyond their

pleadings. *See* (Docket No. 30). Thus, the Court must take it to be undisputed, for purposes of the pending motion, that Defendants did not instruct Plaintiffs to deposit any funds with Acelera, and no such transfer took place. *See* Watkins v. Musk, No. 24-CV-11384-PBS, 2025 WL 1661950, at *4 (D. Mass. June 12, 2025) (refusing to accept Plaintiffs alleged facts supporting standing after they failed to submit evidence rebutting the affidavit submitted by Defendants in support of their 12(b)(1) motion to dismiss); *see also* Barrett v. QuoteWizard.com, LLC, No. CV 20-11209-LTS, 2020 WL 7626464, at *3 (D. Mass. Nov. 12, 2020) (*citing* Strahan, 910 F.Supp.2d at 377).

Viewing the evidence presented by Defendants and the unchallenged factual allegations from the *Complaint* in the light most favorable to Plaintiffs, the Court concludes that there exists no genuine dispute of fact regarding Acelera's participation in the banking transactions between Plaintiffs and HRB. The unrebutted evidence shows that Acelera had no role in the transfer or retention of funds at issue, thus there are no facts linking Acelera to any of the claims brought by Plaintiffs against them. For this reason, Acelera cannot be deemed a proper defendant in the present case and diversity of parties is destroyed. Consequently, the Court lacks jurisdiction to resolve the case.

The Court notes that Plaintiffs requested, in a footnote, that "[i]f the Court is unsatisfied that it has jurisdiction based

Civil No. 24-1467 (GMM)
Page -19-

on Plaintiff's allegations against Acelera, it should order limited discovery." (Docket No. 21 at 20, fn. 8). Plaintiffs cite to Valentin to emphasize the Courts duty to resolve the factual disputes between the parties and its "broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." 254 F.3d at 363. However, in Valentin the First Circuit makes clear that when a defendant launches a factual challenge to a plaintiff's claim for jurisdiction, the plaintiff has an obligation to present evidence for the Court to be able to resolve the factual dispute in their favor. *See* Valentin, 254 F.3d at 363 ("[T]he plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties."). Plaintiffs failed to provide any reason why discovery is warranted here, especially when the "wiring instructions" repeatedly referred to in the *Complaint* and *Opposition* as a basis for the alleged jurisdictional facts is presumably evidence already in Plaintiffs' possession.

Finally, because Plaintiffs have failed on the threshold requirement for subject-matter jurisdiction, the Court need not address the remaining arguments in Defendants *Motion to Stay/Dismiss*. *See* Steel Co., 523 U.S. at 101–02 (1998) (noting that court should not reach merits unless first assured that it

has jurisdiction; to assume jurisdiction *arguendo* would result in an advisory opinion).

### IV. CONCLUSION

For the foregoing reasons, *Defendants' Memorandum of Law in Support of Their Motion for Stay of this Action Pending Mediation/Arbitration, and/or to Dismiss the Action Pursuant to Federal Rule of Civil Procedure 12(b)(6)* filed at Docket No. 13 is **GRANTED**. Thus, Judgment shall be entered dismissing the *Complaint* in its entirety without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, August 12, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
